Here comes the barrel. Here comes the ball. Is it a barrel? Is it a ball? The two hemispheres? That remains to be seen. I'd like to have order in the courtroom, please. Mr. Ben, good morning. Welcome. Good morning. Please proceed with your argument. May it please the Court. We're here because we believe the lower court erred in its construction of the term repair of hemispherically shaped rearward wheels. We're also here because the Court refused to allow us to apply the doctrine of equivalence, citing that there was vitiation and the all elements were not complied with. Would you address first the construction of the word pair, because it's a separate limitation, at least as I would read these two independent claims, and therefore if the accused device is lacking a pair, what the pair is all about is really immaterial, because absent a pair of whatever it has to be, there's a missing limitation and therefore there can't be at least literal infringement, and under the vitiation doctrine perhaps not equivalent infringement either. So how is it that a pair, as used in this patent, can properly be construed to include something that is singular, not dual? Well, this Court has multiple times held that if a function has two functions and the accused device has one, that that does not vitiate it. There's an immaterial difference between the two devices. No, no, no, stick with me. It's just starting out as a matter of linguistics. The patent says pair. It doesn't define pair. Pair's ordinary meaning is two matching somethings. Now, you're saying that it was an error of claim construction to define pair as meaning two things, that it really could mean one thing like the single wheel of the accused vacuum cleaner, and I'm having trouble following how the word pair can be construed to mean one thing. All right, first of all, the term that the Court used, he went to the 1986 dictionary website. Well, can we begin? The place to begin in interpreting claims are the claims themselves, isn't it? Correct. Now, let's look at the claims. What do the claims say about pair? Isn't one of the claims in issue, say, when both of the rearward wheels are disposed? Doesn't that clearly mean there are two, not one? Yes. So isn't the claims the beginning of where we look for an interpretation of pair? We always start with the claims, and then we go to the specification, and then we go to the intrinsic evidence. All right. Then why don't the claims pretty much end the analysis when they say there are both rearward wheels, and it then refers to when only one rear wheel is disposed? Why doesn't that clearly point to there being two? Well, because there is two. There is a requirement for two, and there are two in the Dyson ball. There are two wheels. You're jumping ahead to your argument about equivalent infringement, but we're not there yet. We're talking about claim construction, which primarily at least deals with literal infringement. And I don't hear you to be responding to Judge Ellis' question. Well, the term pair was the court took the definition, couldn't find a definition, looked at the spec and found there are two wheels that are shown in the rear specifically. He said that they have to be separate in order to be a pair, and that was the 1986 definition. The 1996 definition said this. But, Mr. Benn, suppose he had never looked at the dictionary. Suppose he had never looked beyond the patent document itself, and he starts, just as Judge Ellis correctly suggests, by looking at the claim language. He sees the claim language, which says 222 all over it. Then he looks elsewhere in the spec to see if somehow pair is defined as only one. No such hint anywhere in the spec, right? That's correct. So even if it were error to look at a dictionary, or the dictionary he did look at, why wouldn't that be harmless error? Because any artisan reading this claim sees that there are two rear wheels, period. That's exactly. There are supposed to be two rear wheels. It has to, because they have to function. We have to look at what the spec says how they function together. Oh, it's a claim drawn to structure. This is not a 112-6 claim. This is a claim drawn to structure, a pair of rearward wheels. One wheel is up, the other is on the carpet. Both wheels are on the carpet. Now the other wheel is up, and the other wheel is on the carpet. There has to be two, and we're saying there are two of the Dyson device. Do they work separately? They have to work together. Oh, that's quite contrary to the claim, then, isn't it? No, it's not. They have to work together. One's lifted perpendicularly off. The other one is on the rug. The more you twist it, the more one comes up, the other one goes down. If you look at this, this was rotating. This is the wheel rotating. As one is lifted, the smaller radius goes on the rug. The other one is off the rug. It has no effect. When it's on the parallel… Aren't those just two separate portions of one item, one portion of which is on the ground and the other isn't? Rather than… They're two portions, but they're really just separated by a separator. Well, but not in operation. They're separated because you tore them apart. Well, not necessarily. This could be an axis, a separator. You're still looking at the actual bolts or wheels that form exactly the same way. Again, that's a 112. How can these be hemispheres when the ends are chopped off, if it had been? Because that would go to the intrinsic record. That's going to the definition of hemispherical, if you want to go to that. The term hemispherical, as we look into the specification itself, and we look at the claims, the specification, the drawings, we also look at the prior art. It sure looks like a barrel to me, rather than a pair of… But the definition for hemispherical, the lower Cartesian definition for hemispherical, was bowl-shaped, if you look in the same dictionary, a bowl. A bowl has a truncated apex. Also, the prior art, the Jones patent, shows a truncated apex. It may be that you could have gotten a patent, assuming it's novel and non-obvious and so forth, to a claim drawn to a partial hemisphere, or maybe you could have even gotten a claim drawn to a single wheel in the rear portion of the vacuum cleaner. But the language actually chosen by the inventor or the prosecutor was pair and was hemisphere, not truncated hemisphere, not semisphere, not part of a hemisphere, hemisphere. Why isn't the world entitled to be unnoticed that those are the structures covered by the claim and nothing else? Because it's not hemisphere, it's hemispherically shaped. That's the difference, and if you look at the… Well, you say it's a difference, but it's not clear to me that there's any difference. Hemispherically, as opposed to the term hemisphere? Correct. Hemisphere, well, hemi means half or part of the whole. And we're entitled to the broader interpretation, because this is a first office action allowance. There's no stopping involved. So we're entitled to look at the claims in the broadest term possible. And if you look at the definition of hemi, it means part of a… Wait a minute. How do you become entitled to construe claim terms in the broadest possible manner? A patent examiner, as a matter of examination practice, so construes them. But a court isn't required, indeed even allowed, to construe claim terms in their broadest possible meaning. But all the evidence that's been presented should be looking at as true and all inferences are to be drawn in favor of the non-moving party. But on claim construction, we're not doing inferences. We're analyzing the context of the claim and the other claims and the specification to understand how the artisan would construe the word, the phrase, pardon me, hemispherically shaped and paired. Well, we look into the prior art that was cited in the patent, how they used the term hemispherical. We looked at that. We also look at the Bay case, described hemispherical as being something that is part of a sphere, not necessarily a hemisphere, but part of a sphere. But that was the case where we found that the patentee acted as his own electrographer and had a unique definition in the spec for hemisphere. Our case is the opposite. Here the spec doesn't say a blessed thing about what hemisphere means, so that would seem to leave hemisphere meaning what it normally means, which is, I think, half a sphere. No, it does say something about what the shape of the sphere is supposed to be. It's supposed to be that the radius of the sphere is reduced as you lift the other side. It specifically says the further the rearward axis is tilted, the smaller the effective radius of the hemisphere wheel and the tighter the turn. So you have the spec defining the structure of what this wheel is supposed to be, and these wheels meet that structure. There's uncontested testimony of the declaration of Professor Barnett that said that these are parts of spheres, spherical zones, and that these operate the same way, exactly the same way, with exactly the same result and the same function. All right. Do you want to save your reserved rebuttal time? Yes. All right. Thank you. Mr. Benn, we'll have you back on rebuttal. Mr. Beeney? Thank you, Your Honors, and may it please the Court. Your Honor, in light of the discussion this morning, I'd like to start by dealing with the construction of the word pair, move on to the issues of infringement under the claim literal infringement and the doctrine of equivalence, and obviously if Your Honor is affirmed with respect to the pair limitation, the issue with respect to hemispherically shaped becomes moot. The difference between the district court's claim construction of pair and that asserted by Mr. Weger is that the district court said that pair, yes, does indeed require two things, but it requires two separate things. Mr. Weger agrees. In his brief below, he said that pair does indeed require two things, and indeed in his opening and reply brief to this court, he said that pair requires two things, but he said that pairs need not be spaced apart, and I think the only way to read that, Your Honor, is to say really that one thing can always be two because I can cut it in half. Spaced apart means two separate things. If two separate things don't need to be spaced apart, then really all Mr. Weger is saying is I can always cut one thing into two and then I have a pair, and I think we obviously need to be clear that the device that Mr. Weger brought to counsel's podium is not the device sold by Dyson. It's the device sold by Dyson with Mr. Weger taking a saw to it and separating it apart. The device sold by Dyson is a single unified thing that cannot be separated. That's what we would call integral, isn't it? Indeed, Your Honor. It's a piece of molded plastic. It's cast as a single piece. It is indeed, Your Honor. And so I think that there's really no dispute that the district court did interpret pair and construe it correctly, both procedurally under Phillips as well as reaching the right result and coming to the conclusion that pair requires there to be two separate things. To say that I can make a pair out of any one thing because I can cut it in half really is not the stuff of claim interpretation. There is not any single one thing that can't be cut in half, and therefore under Mr. Weger's interpretation, any single thing would always be a pair because he can cut it in half. What about the doctrine of equivalence? Is there a triable issue as to whether the drum, if I may call it that, and the wheels as illustrated, for example, in the figures in the asserted patent operate in substantially the same way? I don't believe there is, Your Honor, for a number of reasons, and if I may address the question, I'd like to start with whether the differences are substantial or not, and then to the extent that Your Honors would like, I can certainly address the fact that the Dyson accused device does not operate in the same way as the Weger patent, and there's plenty of uncontested record evidence about that. But with respect to whether the doctrine of equivalence can be used to claim infringement based on Mr. Weger's claim, and I think, Judge Michel, Your Honor hit the nail right on the head. Is Mr. Weger going to be limited to the claims that he prosecuted? And, of course, the court in many decisions has said that an inventor should be. But I think there are two significant doctrines that are implicated by the application of the doctrine of equivalence here. The first is whether the public is entitled to be put on notice by the limits of a claim that a patentee prosecutes. And I respectfully submit to Your Honors that no one looking at this orange barrel could conclude that this constitutes infringement of a pair of hemispherically shaped wheels. A corollary of the fact that the patent claims are to put the public on notice as to the precise meets and bounds of the patent, and we all know that for more than 100 years, Section 112 has required specificity in the patent claims that a patentee prosecutes. But a corollary of that doctrine is the fact that when a device can be envisioned at the time of patent prosecution, it is incumbent upon the patentee to prosecute the claims to encompass that device, or in the words of Bicon, decided by this court, the patentee has implicitly given that device up. Mr. Weger's expert says that it was clear to anyone at the time that the 305 patent was prosecuted, that any dome-shaped device would accomplish the purposes of Section 112, but Mr. Weger did not prosecute a patent that sought coverage for one or more dome-shaped wheels. He prosecuted a patent that claimed a pair of hemispherically shaped wheels. Do we know why, by the way? We don't, Your Honor. The patent was issued exactly as Mr. Weger prosecuted it. Was there prior art, single wheels, that he was possibly trying to avoid by saying a pair of wheels? There is nothing in the record that indicates why he did not prosecute the claim that he is attempting to make now. Isn't the answer likely that that wasn't his invention? Indeed, Your Honor. There was plenty of prior art with respect to the concept of riding on a side of a smaller radius, and it may have been indeed that he was trying to avoid that, but that is with respect to the record speculation. The point that that is, of course, dispositive, I would submit, to Your Honors of this appeal, is that he didn't prosecute it. Do you agree with Judge Lurie that there's no hint anywhere in this patent that the inventor, Mr. Weger, contemplated a single barrel-shaped variant of his invention? That is correct, Your Honor. So would you argue, based on that, that if we were to interpret the claim as covering a barrel, that there's insufficient support in the specification to support such a claim that could still be valid? That would be correct, Your Honor. Indeed, there are all sorts of validity issues that obviously were not raised on this summary judgment record, but that certainly is one of them. And it is true with respect to the doctrine of equivalence, I think, Your Honor. As the Court said in Sage Products and Bicon, that when there is a simple structural limitation, that the patentee has to be held to the claim that the patentee prosecuted. There is no one, again, I respectfully submit to Your Honors, looking at this device that is the Dyson product that could believe that by manufacturing this device, it was infringing the claim of a pair of hemispherically shaped wheels. We know that's what Mr. Weger prosecuted, and that's the claim that he should be limited to. Is there some indication in the record that the Dyson wheel designers were trying to avoid this patent by deliberately selecting two wheels versus one in order to avoid infringement? There is not, Your Honor.  That suggests that that could not be the case, and that is the Weger patent itself, the accused device, and the Dyson patent application, which shows that, in fact, the accused device operates in a manner substantially different than the Weger patent. Mr. Weger's patent talks about moving the rearward wheels so that one is disposed and one is not, to create a tighter turning radius by moving the handle back and forth. The Weger, excuse me, the Dyson patent application, particularly at pages 397 and 415 of the record, talk about taking the handle and moving it in a, quote, corkscrew, quote, fashion, which, because of the coupling device at the base of the barrel, actually turns the head, if I may, Your Honors, it actually turns the head in the direction. That makes it worse. We need to bring it closer. The Dyson works in a substantially different fashion as shown by the record in the Dyson patent application. It talks about turning in a corkscrew fashion, which turns the head in the direction you wish to move. If, however, you do it the way the Weger patent specifies, the 305 patent specifies, by moving the handle in this direction, you do not get the Dyson to turn at all. So, in fact, to answer Chief Judge Michel's question, not only is there no evidence that this was an attempt at a designer act, the evidence in the record is uncontested that this accused device does not operate in a way that the Weger patent specifies, which is, again, another reason why the Doctrine of Equivalence on summary judgment can't be applied here. Do I take your argument, though, to be that the analysis can end on Doctrine of Equivalence when the two or the pair claim term is vitiated by the application of the Doctrine of Equivalence? You can't do that? Absolutely, Judge Ellis. And that, in your view, is sufficient and ends the analysis? It does indeed, Your Honor. Now, I'm curious. When was the patent issued again? If Your Honor is getting to the question as to whether the Dyson patent application was later, it was later than the issued 305 patent. All right. But, again, it is a completely different mechanical function, and there is no dispute in the record about that. And, again, it's the Weger patent, the Dyson application, and, indeed, the accused device itself. Anything further? No, Your Honor. I would just say that the policies of the patent law are certainly implicated by Mr. Weger's attempt to cover a device he did not prosecute. To paraphrase John W. Davis, and with apologies to him, I would certainly rejoice if Your Honor has had any further questions. But, otherwise, I am done. Then we'll rejoice, too. Thank you very much. Thank you. Mr. Ben, you have rebuttal time of about 4 1⁄2 minutes, if you need at all. Well, first of all, the witness testimony in the specification, that twisting is used, not the levering back and forth. Column 4, lines 49 through 34, he says, it would be appreciated that the inverted U-shaped handle likewise provides added leverage and the user maneuvers the handle to twist the upright portion. So the testimony was incorrect. There was twisting. Also, the pantee said that he envisioned many different embodiments, that this is the preferred embodiment, but other embodiments, and he says this nine times throughout the specification, would be applicable here. Counsel often says that in situations where there is no other embodiment. Is there any other embodiment here? Any other, pardon? You said the specification talks about the preferred embodiment. Is there any other embodiment here where there is no pair of hemispheres? No, no, there's not. There's always been a pair, but then there is a pair. In other words, the word preferred is sort of useless language in interpreting this pattern. Yes, preferred. There are supposed to be two wheels, but there are two wheels. They're just connected by a connector. And under the doctrine of equivalence, and this court is held in Eagle and DiMartini Sports where two into one does not automatically mean vitiation. In Festo, this court said two separate seals replaced by a dual-action seal. That was not vitiation. That was not a violation of the all-elements rule. In Eagle-Contronics v. Aerocommunication, if there were insubstantial differences between the two, then there is no vitiation. What is the difference? The difference is it's two half-circles. By the way, it doesn't operate when you twist this device on its end. When you twist it on its end, it's inoperable. It doesn't operate. It can't operate. So the apex, whether it has an apex or doesn't have an apex, is irrelevant because it's not used. And the only other court, the only court that we could find, was the Bybee Aero Manufacturing, which specifically said that something less than a sphere is hemispherical. And we have hemispherical wheels. And I don't understand why, if you hide it, as long as the claim structure covers part of the accused device, that there's infringement. This was in equal communications, commutations. It covers two. There's two spheres that just happen to be put together by a large axis, which, when rotated on its axis, forces a smaller radius on the wall. I'd like to go to the term hemispherical. Better yet, I'd rather go to the omissions of the Rule 56A. The defendant, the appellant, not the appellant, the appellee, failed to properly respond to our additional issues of fact under Rule 56-1 of the Local Rules. Mr. Ben, this is a rebuttal of the appellee's argument. Well, he said that there was omissions in the record. The omissions in the record of the operation of this are totally against the operation that they just said. We have the only testimony, it's uncontroverted and uncontradicted, is Professor Barnett's interpretation and findings after doing extensive analysis that these are actually spherical zones. And if you look at Tab C of the handout that we gave you, Tab C shows what a hemispherical zone is. And a hemispherical zone is when you have a sphere and you cut it with two planes that are spaced apart. You have something that is part of a sphere. That part of a sphere is identical to the definition that was given by the... Is your argument that because it was not met by a counter-affidavit by an expert on the other side that the court was compelled by the existence of the Barnett affidavit to find a triable issue and therefore to deny summary judgment? At least on the issue of doctrine of equivalence, yes. Well, why would that be true? Because it's not the case that there's no evidence to counter the Barnett Declaration because the patent itself is evidence. Well, the patent talks about hemispherical zones. Are we talking about the pair limitation or are we talking about hemispherically? Both. Well, hemispherically we have the actual... I understood your argument to be, in part, that because there was no contrary affidavit to be the counterpart of Mr. Barnett's affidavit that you have to win and get a reversal of summary judgment and that you've shown entitlement to trial. Is that correct? Is that part of your argument? You just can't respond by saying immaterial or irrelevant or denied. You have to give counter evidence support, not just refer to the patent, but give specific representation as to where... What case holds that an affidavit has to be met by another affidavit and can't be met by the patent itself? I don't think there is a case that says that, Your Honor. All right. Anything further? No, that's all I have, Your Honor. All right. We thank both counsel. We'll take the appeal under advisement.